**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MICHAEL BRACKEN and | § | |
| LAURA BRACKEN, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 4:12-cv-679 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| *Defendant.* | § | |

<u>**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S**</u>
<u>**MOTION TO DISMISS AND GRANTING IN PART DEFENDANT'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Pending before the court is Defendant Wells Fargo Bank, N.A.,'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 19) and Plaintiffs' Response (Dkt. 20). Also pending before the court is Defendant's Motion for Summary Judgment (Dkt. 26), Plaintiffs' Response (Dkt. 32), Defendant's Reply (Dkt. 36), and Plaintiffs' Sur-Reply (Dkt. 39). For the reasons set forth herein, Defendant's Motion to Dismiss (Dkt. 19) is **GRANTED** in part. On the claims that remain, Defendant's Motion for Summary Judgment (Dkt. 26) is **GRANTED**. Accordingly, Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

The parties' motions in limine (Dkts. 43 and 44) are **DENIED AS MOOT.**

### I. JURISDICTION AND VENUE

Jurisdiction is proper in this court under 28 U.S.C. §§ 1332(a)(1) and 1367. Venue is proper under 28 U.S.C. § 1391(b)(2).

### II. BACKGROUND

The facts as alleged in Plaintiffs' Second Amended Complaint are as follows: Plaintiffs purchased the property at 2617 Westridge Drive, Plano, Texas 75075 in 1994. Plaintiffs

refinanced their mortgage on August 28, 2008 with a Texas Home Equity Note held by

Defendant Wells Fargo.

Plaintiff Michael Bracken lost his job in October 2008. Before Plaintiffs fell behind on

their payments, they notified Wells Fargo of their financial difficulties and requested that Wells

Fargo arrange a lower payment plan for them until Mr. Bracken could find employment.

According to Plaintiffs, Wells Fargo responded that "they did not know any way to help them."[1]

Plaintiffs failed to make their January 2009 payment.

Plaintiff Laura Bracken lost her job in February 2009. In March 2009, Plaintiffs called

Wells Fargo and requested a loan modification in response to a letter sent by Wells Fargo

outlining some options that could assist Plaintiffs in bringing their loan current. Plaintiffs then

went through the steps to apply for a loan modification. On May 20, 2009, Wells Fargo sent

Plaintiffs a monthly mortgage statement that reflected a new payment amount. The new

statement showed that Plaintiffs were behind $5,379.30 on their payments.

On July 9, 2009, Plaintiffs received a letter from Defendant's foreclosure counsel, Barrett

Daffin Frappier Turner & Engel (BDFTE), indicating that Wells Fargo was accelerating their

debt and that a foreclosure sale was scheduled for September 1, 2009. In response, "Plaintiffs

contacted Wells Fargo and were told that the foreclosure action would run concurrently with

their attempt to modify the loan and that Wells Fargo could postpone the sale date as needed."[2]

From that point on, Plaintiffs continued pursuing a loan modification. They were asked to

submit three trial payments for a reduced amount, which they successfully paid. They were

repeatedly asked to submit additional (and sometimes duplicative) financial information to be

considered with the modification application. Plaintiffs continually contacted Wells Fargo to

_____

[1] Compl. ¶ 9.
[2] Compl. ¶ 12.

inquire about the status of their application and were, according to Plaintiffs, given various responses, including that their application was no longer being considered and they would need to start the process over again. Wells Fargo continued to postpone the foreclosure sale of the property, and Plaintiffs entered into a second trial payment plan.

Finally, on May 25, 2010, Wells Fargo approved Plaintiffs' modification application. However, Plaintiffs allege that when they received the paperwork from Wells Fargo it was incorrect. Plaintiffs returned the paperwork to Wells Fargo unsigned. Plaintiffs continued to follow up with Wells Fargo and to seek a loan modification.

On July 16, 2010, Plaintiffs were told that their loan could not be modified because there was a lien on their property. Plaintiffs contend that there was no lien against their property, and that they confirmed that by checking with the county records office. Plaintiffs allege that they contacted Wells Fargo on July 18, 2010 and "were told that Defendants routinely make claims that there are liens against the property knowing it is false, but it slows things down since the homeowner now has to prove that there really are no liens on the property."[3] Plaintiffs do not allege who they spoke with during this conversation. Then Plaintiffs were told that they would have to start the modification process over. In the meantime, Plaintiffs assert that they continued to submit payments in the amount of the second trial payment plan, but that Wells Fargo began returning the payments.

Ultimately, in October 2010, Wells Fargo advised Plaintiffs that they did not qualify for any type of loan modification program because their loan is a Texas home equity loan. Wells Fargo also notified Plaintiffs that their home would be sold at a foreclosure auction on January 4, 2011. Plaintiffs filed a voluntary bankruptcy petition to stop the sale.

---

[3] Compl. ¶ 25.

Plaintiffs continued to seek a loan modification from Wells Fargo, but Wells Fargo continued to respond that their loan could not be modified because it is a Texas home equity loan. On February 3, 2011, Plaintiffs received a notice of default and intent to accelerate from BDFTE. Plaintiffs continued to contact Wells Fargo and spoke with various representatives and re-submitted their financial information a number of times. However, Wells Fargo maintained that Plaintiffs loan was not eligible for modification because it was a Texas home equity loan. Defendant filed an application for foreclosure. Plaintiffs filed this suit to prevent the foreclosure.

### III. LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, the court must accept all of the plaintiff's allegations as true.[4] A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint."[5] "Factual allegations must be enough to raise a right to relief above the speculative level."[6] In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[7] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[9] However, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."[10]

---

[4] *Ballard v. Wall*, 413 F.3d 510, 514-15 (5th Cir. 2005).
[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).
[6] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 555).
[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).
[8] *Id.*
[9] *Id.*
[10] *Twombly*, 550 U.S. at 563 n.8.

The Supreme Court in *Iqbal* established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.[11] First, the court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth."[12] Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."[13] This evaluation is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."[15] Substantive law determines which facts are material.[16] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[17] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[18] Therefore, in deciding whether to grant a motion for summary judgment, the court must consider whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[19] The court must construe all facts and inferences in the light most favorable to the nonmovant party.[20] When "the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the

---

[11] *Ashcroft*, 556 U.S. at 679-80 (2009).
[12] *Iqbal*, 556 U.S. at 679.
[13] *Id.* at 681.
[14] *Id.*
[15] Fed. R. Civ. P. 56(a) (emphasis added).
[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[17] *Id.*
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[19] *Anderson*, 477 U.S. at 250.
[20] *See Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).

nonmovant's case."[21] Once the movant has met this burden, the burden shifts to the nonmovant

to offer evidence that would show there is a genuine issue of material fact with respect to the

claims raised. The nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and "may not rely upon the mere allegations or denials of his pleading."[22]

"Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's

burden."[23] The moving party must look beyond the pleadings and designate specific evidence in

the record to show that there is a genuine issue for trial.[24] The citations must be specific because

the district court is not required to "scour the record" to determine whether the evidence raises a

genuine issue of material fact.[25] Summary judgment is appropriate when the evidentiary material

of record, when reduced to admissible evidence, would be insufficient to permit the nonmoving

party to carry its burden of proof.[26]

## IV. ANALYSIS

### a. Breach of Contract

Plaintiffs' Second Amended Complaint alleges a number of theories in the section

entitled "Breach of Contract and Anticipatory Breach of Contract."[27] Plaintiffs first allege that

Defendant breached the Deed of Trust contract when it violated Section 51.002 of the Texas

Property Code by failing to give Plaintiffs an opportunity to reinstate their loan before

acceleration of the entire indebtedness and by preventing Plaintiffs from performing under the

---

[21] *Payne v. Sw. Bell Tel., L.P.*, 562 F. Supp. 2d 780, 783 (E.D. Tex. 2005).

[22] *Id.* at 322 n. 3; *see also* FED. R. CIV. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").

[23] *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (internal quotation marks omitted).

[24] *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

[25] EAST. DIST. TEX. LOCAL R. CV-56(c).

[26] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[27] Compl. ¶ 15.

note. Second, Plaintiffs allege that Defendant waived its right to foreclose. Finally, Plaintiffs allege that Defendant breached a unilateral contract with Plaintiffs based on its representations and promises of a loan modification when it posted Plaintiffs' property for foreclosure sale.

To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach."[28] The parties do not dispute the existence of a valid contract arising out of the Note and Deed of Trust. Defendant argues that Plaintiffs cannot establish that they complied with their contractual obligations because they failed to make the required monthly payments and therefore cannot bring a claim of breach against Wells Fargo.[29] The court agrees.[30] Plaintiffs do not dispute that they ceased making timely monthly payments to Wells Fargo.[31] Nonetheless, the court will address each basis for Plaintiffs' breach of contract claim because a default by Plaintiffs was specifically contemplated by the contract, so it is unlikely that the parties intended Plaintiffs' failure to make timely payments to be a material breach that would excuse Defendant from adhering to the foreclosure procedure set forth in the contract.[32]

Plaintiffs allege that Defendant violated Section 51.002(d) of the Texas Property Code. Section 51.002(d) of the Texas Property Code requires a mortgagee to serve "written notice by certified mail stating that the debtor is in default," and give a mortgagor "at least 20 days to cure

---

[28] *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. denied) (mem. op.); *see also Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

[29] Dkt. 19 at 15.

[30] *See Thomas v. EMC Mortgage Corp.*, 499 F. App'x 337, 341 (5th Cir. Nov. 30, 2012) ("Under well-established principles of Texas contract law, that material breach would normally prevent [the Plaintiffs] from maintaining a breach-of-contract claim." (citing *Dobbins v. Redden*, 785 S.W.2d 977, 978 (Tex. 1990))).

[31] *See generally* Sec. Am. Compl.

[32] *See Sinclair v. Donovan*, No. 1:11-cv-00010, 2011 U.S. Dist. LEXIS 128220, at *27 (S.D. Ohio, Nov. 4, 2011) ("[I]t indeed would be an absurd result if the Lender Defendants were allowed to ignore the contract terms drafted to govern their post-default conduct on the grounds that the mortgagors have defaulted.").

the default before notice of sale can be given." The Deed of Trust further requires that Lender "give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Security Instrument" that specifies "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums" owed.[33]

Plaintiffs contend in their Second Amended Complaint that Defendant never gave them an opportunity to cure and reinstate their note. However, the allegations within the Second Amended Complaint show otherwise. Plaintiffs received a statement in May 2009 indicating the balance of overdue payments. Then, two months later in July 2009, Plaintiffs received a letter from BDFTE indicating Wells Fargo's intention to accelerate the debt and notifying them that a foreclosure sale would be scheduled for September 1, 2009. Assuming the allegations from the Second Amended Complaint were sufficient to state a claim for breach of contract against Wells Fargo for failing to give Plaintiffs an opportunity to cure and reinstate, the summary judgment evidence put forth by Defendant shows that Plaintiffs were given multiple opportunities to cure and reinstate their note during the last five years.[34] Defendant's motion for summary judgment with regard to Plaintiff's breach of contract claim on this theory is **GRANTED.**

Plaintiffs next allege that Defendant breached the Deed of Trust contract by preventing Plaintiffs from performing under the contract. Plaintiffs have failed to state a plausible claim for relief based on this theory. It is undisputed that when Plaintiffs ceased making payments on their mortgage, it was due to their own financial difficulties and not because Wells Fargo prevented

---

[33] Dkt. 19-1 ¶ 21.
[34] Dkt. 26 at 12 ("Specifically, one example is the February 2011 Notice of Default and Intent to Accelerate which was mailed to and received by the Brackens, and which demanded the past-due balance of $33,128.08 to cure and reinstate."); *see also* Dkt. 26-8; Dkt. 26-10 at 122:4-123:34; Dkt. 26-11 at 32:17-34:9.

them from making payments. Defendant's motion to dismiss Plaintiffs' breach of contract claim based on this argument is **GRANTED**.

### 1. Waiver of Wells Fargo's Right to Foreclose

Plaintiffs next argue that Defendant waived its right to foreclose. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."[35] Plaintiffs contend that Defendants waived their right to foreclose by inducing Plaintiffs to remain in default while it was considering Plaintiffs' loan modification application. Plaintiffs have not stated a plausible claim of waiver. In fact, their Second Amended Complaint illustrates the opposite. Wells Fargo specifically informed Plaintiffs that "the foreclosure action would run concurrently with their attempt to modify the loan."[36] Even if Plaintiffs had stated a plausible claim for relief based on their waiver theory, the Deed of Trust makes clear that

> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower . . . shall not operate to release the liability of Borrower . . . Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.[37]

Further, the summary judgment evidence shows that Wells Fargo did indeed continue to pursue foreclosure by repeatedly posting the property for foreclosure sale.[38] Plaintiffs cannot show that that there is a genuine dispute as to the material fact that Defendant did

---

[35] *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).
[36] Compl. ¶¶ 11-12.
[37] Dkt. 26-3 ¶ 11.
[38] *See e.g.,* Affidavit of Laura Bracken, Dkt. 32-1 at 2 ("On July 6, 2009 we received a letter notifying us that our loan file had been referred to Wells Fargo's attorneys."); Dkt. 32-1 at 8 ("On or about October 25, 2010, we were advised that Wells Fargo had set a new sale date of January 4, 2011.").

not intentionally relinquish its right to foreclose. Defendant's motion for summary judgment on Plaintiffs' waiver claims is **GRANTED**.

### 2.   Wells Fargo's Breach of Unilateral Contract

Plaintiffs allege that Defendant breached a unilateral contract with Plaintiffs based on its representations and promises of a loan modification when it posted Plaintiffs' property for foreclosure sale. Plaintiffs contend that Wells Fargo's promises to modify their loan if they made trial payments constitute a unilateral contract that became binding once Plaintiffs made the trial payments.

A unilateral contract is "created by the promisor promising a benefit if the promisee performs" and becomes enforceable when the promisee performs.[39] Plaintiffs' performance under this purported contract does not create a plausible claim for breach of a unilateral contract because the attempted modification is not supported by consideration. "Under Texas law's 'pre-existing duty rule,' an agreement to do what one is already bound to do generally cannot serve as sufficient consideration to support a contract modification."[40] Plaintiffs were already obligated to make payments on this mortgage under the Deed of Trust and the submission of the trial payments does not create a unilateral contract that modifies the original terms of the Note and Deed of Trust. Further, any contract modifying the Note and Deed of Trust is subject to the statute of frauds and must have been in writing to be enforced.[41]

---

[39] *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011) (quoting *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009)) (internal quotation marks omitted).
[40] *Rackley v. JPMorgan Chase Bank, N.A.*, Case No. SA-11-CV-387-XR, 2011 WL 2971357, at *4 (W.D. Tex. July 21, 2011).
[41] TEX. BUS. & COM. CODE § 26.02(a)(2) & (b); *see also* Dkt. 26-2, Texas Home Equity Note at ¶ 12 ("This Note constitutes a "written loan agreement" pursuant to Section 26.02 of the Texas Business and Commerce Code, if such section applies. This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior,

The undisputed summary judgment evidence shows that it was Plaintiffs who rejected the modification contract offered by Defendants after Plaintiffs complied with the trial payment plan. Plaintiffs sent back the modification contract unsigned because they believed that their income had been incorrectly assessed. [42] Even if it were possible for a unilateral contract modifying the loan agreement to be formed under these circumstances, Plaintiffs' rejection of the modification offer prevents their claim for breach of a unilateral contract against Defendant.

### b.  Anticipatory Breach of Contract

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance."[43] To establish a claim for anticipatory breach of contract, a plaintiff must show: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party."[44] "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms."[45] But "the declaration of intent to abandon must be in positive and unconditional terms."[46]

While the header on Plaintiffs' Second Amended Complaint indicates that they are alleging a claim for anticipatory breach of contract, they have alleged no facts to support this claim. Plaintiffs contend that "Wells Fargo manifested through its words and actions an

---

contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.").

[42] Dkt. 26-10, Tr. 111:1-8. The summary judgment evidence put forth by Defendant, and undisputed by Plaintiff Michael Bracken during his deposition establishes that Wells Fargo did not incorrectly assess Plaintiffs' income when it drafted the modification agreement.

[43] *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

[44] *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004).

[45] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010).

[46] *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ).

unconditional intent to abandon its obligations under the Note when it advised Plaintiffs to keep making payments under the trial payment plans and promised not to foreclose during the loan modification process."[47] However, the uncontradicted summary judgment evidence shows that Wells Fargo made it clear to Plaintiffs that it would continue to pursue foreclosure during the modification process, and therefore there is no genuine dispute as to any material fact showing that Wells Fargo repudiated any of its obligations under the Note and Deed of Trust. Therefore, Wells Fargo's motion for summary judgment on Plaintiffs' anticipatory breach of contract claim is **GRANTED**.

### c.   Unreasonable Collection Efforts

Under Texas law, "(u)nreasonable collection is an intentional tort."[48] "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case."[49] Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."[50] Plaintiffs allege that Defendant intentionally misled Plaintiffs by promising a loan modification while assessing penalties and interest on the loan and accelerating the debt without giving Plaintiffs an opportunity to cure the default. Plaintiffs have failed to allege any facts that would show that Defendant acted willfully, wantonly, maliciously, or acted with intent to inflict harm upon

---

[47] Dkt. 32 at 22.
[48] *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.).
[49] *Id.*; *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009).
[50] *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011).

Plaintiffs. Therefore, the court **GRANTS** Defendant's motion to dismiss Plaintiffs' claim for unreasonable collection efforts.[51]

### d.  Texas Debt Collection Act/Texas Deceptive Trade Practices Act

Plaintiffs next allege four violations of the Texas Debt Collection Act. The TDCA applies to foreclosure actions because "foreclosure actions inevitably involve a debt collection aspect."[52] The Act prohibits debt collectors,[53] in debt collection,[54] from using a "false representation or deceptive means to collect a debt or obtain information concerning a consumer."[55] A statement is a misrepresentation if the defendant made "a false or misleading assertion."[56] The TDCA also prohibits fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt"[57] and using unfair or unconscionable means to "collect or attempt to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."[58] The TDCA further prohibits threatening to take an action prohibited by law.[59]

---

[51] Indeed, Plaintiffs failed to respond to Defendant's motion for summary judgment on this claim, and therefore even if Plaintiffs had stated a plausible claim for relief, Defendant's motion for summary judgment would be granted because Plaintiffs failed to put forth evidence to show that there is a genuine dispute as to a material fact.

[52] *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730-732 (N.D. Tex. 2011).

[53] A debt collector is "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6).

[54] Debt collection is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." TEX. FIN. CODE §392.001(5). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE ANN. § 392.001(2).

[55] TEX. FIN. CODE § 392.304(a)(19).

[56] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010).

[57] TEX. FIN. CODE § 392.304(a)(8).

[58] TEX. FIN. CODE § 392.303(a)(2).

[59] TEX. FIN. CODE § 392.301(a)(8).

Plaintiffs contend that by "delaying" their loan modification application for fourteen months, requiring Plaintiffs to submit their financial information multiple times, and incorrectly calculating a modification package, Defendant violated the TDCA. Plaintiffs also argue that Wells Fargo's actions in taking the loan out of the modification process and adding "numerous charges for late fees and past due interest for nonpayment during these periods" are a violation of the TDCA. Plaintiffs further assert that they were "misled by Defendant into believing that they were being approved for a loan modification if they kept making the payments pursuant to the trial payment plans, that they were eligible for a loan modification, and that their loan would be modified."[60]

Plaintiffs have failed to put forth any evidence that supports their allegation that Wells Fargo used a false or deceptive means to collect a debt. Wells Fargo told Plaintiffs that foreclosure would be pursued concurrently with consideration of their modification application. Indeed, Wells Fargo offered Plaintiffs a loan modification, which they rejected. There is no evidence to support Plaintiffs' claim that Wells Fargo misrepresented the character, extent, or amount of the debt. Plaintiffs claim under Section 392.303(a)(2) also fails because Plaintiffs have not put forth any evidence to support their allegation that Wells Fargo used unfair or unconscionable means to collect charges incidental to the obligation. Finally, Plaintiffs claim for relief under Section 392.301(a)(8) also fails because they have stated no factual allegations that would support their claim that Wells Fargo's pursuit of foreclosure was prohibited by law. Plaintiffs admit that they fell behind on their mortgage payments, and under the terms of the Deed of Trust and Texas law, Defendant was entitled to pursue the remedy of foreclosure. Therefore, Defendant's motion for summary judgment on Plaintiffs' TDCA claims is

---

[60] Dkt. 32 at 24.

**GRANTED**. Accordingly, Defendant's motion for summary judgment on Plaintiffs' tie-in claims under the Texas Deceptive Trade Practices Act is also **GRANTED**.

### e.  Negligent Misrepresentation

Under Texas law, a claimant alleging negligent misrepresentation must show the following:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.[61]

"The misrepresentation at issue must be one of existing fact" rather than a promise of future conduct.[62] Defendant's promises to modify Plaintiffs' loan are promises of future conduct and therefore cannot support an allegation of negligent misrepresentation. Plaintiffs allege that Defendants told them "their home was safe from foreclosure during the loan modification process."[63] However, Plaintiffs also allege that Wells Fargo informed them that the foreclosure process would occur at the same time Plaintiffs' loan modification application was being considered. Ultimately, prior to Wells Fargo completing the foreclosure process, Wells Fargo repeatedly informed Plaintiffs that no modification to their loan was possible. Yet Plaintiffs continued to call Wells Fargo to request a modification. Plaintiffs have failed to state a claim for negligent misrepresentation, and Defendant's motion to dismiss this claim is **GRANTED**.

---

[61] *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. Feb. 10, 2011) (citing *Fed. Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

[62] *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 30, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011).

[63] Compl. ¶ 77. The court notes that Defendant has also put forth evidence that Plaintiff Laura Bracken testified at her deposition that no one from Wells Fargo ever told Plaintiffs that Wells Fargo would not foreclose on their home. Dkt. 26 at 26. Even if Plaintiffs had stated a plausible claim for relief in their Second Amended Complaint, the summary judgment evidence would still result in dismissal of their claim for negligent misrepresentation.

### f.   Section 50(a), Article XVI of the Texas Constitution

Plaintiffs have withdrawn this claim, and therefore Defendant's motion to dismiss is **DENIED** as moot.

### g.   Declaratory Judgment, Accounting, and Damages

Plaintiffs seek a declaratory judgment, an accounting of all transactions on their loan, and damages. Because the court has either dismissed or granted summary judgment on all of Plaintiffs' substantive claims as detailed in this order, Defendant's motion for summary judgment on Plaintiffs' claims to these remedies is **GRANTED.**

## V.   Conclusion

Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 19) is **GRANTED in part**. Defendant's Motion for Summary Judgment (Dkt. 26) is **GRANTED** on all remaining claims. Plaintiff's claims are **DISMISSED WITH PREJUDICE.** The parties' motions in limine (Dkts. 43, 44) are **DENIED AS MOOT.**

IT IS SO ORDERED.

**SIGNED this the 3rd day of January, 2014.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE